UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATRICIA ANN BURCH                                                                                          PLAINTIFF

V.                                    Case No. 4:11-CV-00391-BD

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                          DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Patricia Ann Burch, appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

I.  **Procedural History:**

Ms. Burch protectively filed an application for SSI on February 1, 2008, alleging an onset of disability on or about January 1, 2002. (Tr. 92) She alleged disability due to pain in her neck and back, hand problems, and depression. The Commissioner denied her claim initially and on reconsideration. (Tr. 52-54, 57-58)

Ms. Burch requested a hearing on June 11, 2008, and a hearing was held before an Administrative Law Judge ("ALJ")[1] on June 18, 2009. Ms. Burch appeared at the hearing with her lawyer and testified. The ALJ also heard testimony from a vocational expert, Floyd J. Massey. (Tr. 8) The ALJ issued her decision denying benefits on October 21, 2009. (Tr. 38-45)

---

[1] The Honorable Monica LaPolt.

Ms. Burch requested that the Appeals Council review the adverse decision on October 23, 2009. (Tr. 6-7). On March 8, 2011, the Appeals Council issued its decision denying the request for review and affirming the ALJ's decision. (Tr. 1-3). Ms. Burch then filed this action seeking judicial review, under 42 U.S.C. § 405(g). The parties have filed briefs, and the case is ready for decision.

**II.     Background:**

At the time of her hearing before the ALJ, Ms. Burch was one month from being 46 years old and had completed twelfth grade. (Tr. 12, 121) She had last worked in October of 2005; she was laid off one month later, in November of 2005. (Tr. 12)

Ms. Burch lived with her husband and two sons. Her usual daily routine at the time of the hearing included having coffee upon waking, watching television, preparing breakfast for her husband and two sons, washing dishes, taking her son to the bus stop, washing two or three loads of laundry, sweeping for thirty minutes at a time, picking up her son from the bus stop, preparing dinner, and cleaning up the kitchen after dinner. (Tr. 15-16, 129) She testified that she had to perform all of these household chores because her husband and two sons did not help around the house, and there was no one else to do the work.

In addition to cooking meals for her sons and husband, doing their laundry, and cleaning up after them (Tr. 16-17, 129, 131), she also grocery shopped weekly for the family (Tr. 19), mopped floors once every two weeks (Tr. 131), dusted the house once a

month (Tr. 131), periodically drove her father to doctors' appointments in Conway, Arkansas (a one-to-two-hour round trip) (Tr. 19-20), and traveled to Conway to shop at Walmart once a month. (Tr. 20-21)  Ms. Burch attended church twice every Sunday (morning and night). (Tr. 26)

At the time of the hearing, Ms. Burch was taking Naprosyn, Amitriptyline, Nexium, Hydrochlorothiazine, and Effexor. She testified that she had experienced no adverse side effects from her medications. (Tr. 25) She also testified that her medications were working all right, except that the Amitriptyline was not working very well at night. (Tr. 26) She conceded that no doctor had told her to limit her activities (Tr. 26), and she had received no counseling for her depression. (Tr. 24) In fact, her doctor had advised her to exercise. (Tr. 28)

### III.  Decision of the Administrative Law Judge:

In her decision,[2] the ALJ determined that Ms. Burch's degenerative disc disease and dysthymic disorder were "severe impairments," as that term is used in social security disability cases. (Tr. 40) She also found, however, that Ms. Burch did not have an

---

[2] The ALJ followed the familiar five-step analysis, determining: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

impairment, or combination of impairments, meeting or medically equaling a "listed" impairment. 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), .925, and .926)  At step five of the sequential analysis, the ALJ determined that Ms. Burch retained the residual functional capacity to perform medium work, except that she could have no transactional interaction with others.[3]

Ms. Burch argues that the ALJ erred at step five of her analysis by:  (1) failing to consider her impairments in combination; (2) failing to consider her subjective complaints of pain; and (3) concluding that she could perform medium work, with some restrictions.

IV.    **Analysis:**

   A.    *Standard of Review*

In reviewing the Commissioner's decision, the Court must determine whether there is substantial evidence in the record as a whole to support the decision.[4]  *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).  This includes consideration of evidence that detracts from the Commissioner's decision as well as evidence that supports the decision.  The Commissioner's decision cannot be reversed,

---

[3] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[4] For purposes of social security appeals, substantial evidence means, "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

however, simply because there is evidence to support a conclusion different from that of the Commissioner's. *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.    *Combination of Impairments*

Ms. Burch argues that the ALJ did not properly consider her impairments in combination. (Docket Entry #10 at p. 12) She does not contend that her mental impairment, standing alone, was disabling, but rather argues that her depression, when considered together with her physical problems, rendered her disabled.

In her opinion, the ALJ noted that she had considered all of Ms. Burch's impairments, including those that were not severe. (Tr. 39) And in her opinion, she explained in detail why Ms. Burch's depression did not meet a Listing. (Tr. 40-41) She addressed each of Ms. Burch's impairments and discussed the objective medical evidence, including her treatment history for chronic back pain and mental health issues, her relatively low Global Assessment Functioning ("GAF") score, her daily activities, medications (including lack of adverse side effects), and her subjective allegations of pain and depression. (Tr. 40-43) See, *e.g.*, *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (holding that the ALJ properly considered combined effects of claimant's impairments where ALJ addressed each of claimant's impairments but found he did not have an impairment or combination of impairments that rendered him disabled); *Raney v. Barnhart*, 396 F.3d 1007(8th Cir. 2005) (ALJ properly considered the effect of claimant's combined physical and mental impairments by listing all physical and mental

impairments and expressly stating he had considered impairments individually and in combination). Clearly, the ALJ considered each of Ms. Burch's impairments, both individually and in combination.

    C.    *Subjective Complaints of Pain*

Next, Ms. Burch argues that the ALJ did not adequately consider her subjective complaints of pain. An ALJ must consider the certain factors when evaluating a claimant's credibility as to disabling pain, including: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Contrary to the statement in the Commissioner's Brief, the ALJ did not specifically refer to *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). However, the ALJ is not required to cite *Polaski* and, in fact, she "need not explicitly discuss each *Polaski* factor." *Goff v. Barnhart*, 421 F.3d 785, 791-92 (8th Cir. 2005) (quotation and citation omitted). So long as the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so," the court should defer to the ALJ's credibility assessment in assessing complaints of disabling pain. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quotation and citation omitted).

Here, the ALJ gave adequate reasons for discounting Ms. Burch's allegations of disabling pain, including the lack of objective medical evidence, effectiveness of medications, and Ms. Burch's substantial daily activities.

D. *Global Assessment of Functioning Scores*

Ms. Burch argues that the ALJ did not properly consider her low Global Assessment of Functioning score of 50. *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed.) ("DSM–IV"), published by the American Psychiatric Association, states that a GAF score of 41 to 50 generally indicates serious impairment in social, occupational, or school functioning. (DSM–IV 32) The DSM–IV is, however, a classification of mental disorders that was developed for use in clinical, educational, and research settings. Specific diagnostic criteria included in the DSM–IV are meant to serve as guidelines to augment clinical judgment and are not meant to be used in a cookbook fashion. A GAF score does not have a direct correlation to the severity requirements in mental disorders listings. 65 Fed.Reg. 50746, 50764–65 (2000).

In this case, Ms. Burch's GAF score of 50, even though fairly low, was not dispositive of her ability to perform a limited range of medium work. Paul L. Deyoub, Ph.D., who assigned Ms. Burch the GAF score of 50, also noted that Ms. Burch, although dysthymic, was nonetheless able to wash dishes, make beds, sweep floors, do laundry, perform all housework, cook, and drive herself and others. (Tr. 209-10)

Unfortunately, Ms. Burch lived with disrespectful and sometimes abusive family members, including her husband and two sons. (Tr. 207) This likely would explain her situational depression, but as Dr. Deyoub noted, Ms. Burch did, "in fact, take care of her daily activities and she has always raised her two children and dealt with a difficult husband." (Tr. 210) This assessment places Ms. Burch's GAF score in context and explains why it was not dispositive.

V.   **Conclusion:**

Substantial evidence in the record supports the Commissioner's decision that Ms. Burch was not disabled under the Act, because she retained the functional capacity to perform jobs that existed in significant numbers in the national economy during the period she alleged that she was unable to work due to disabilities. Therefore, the Commissioner's decision is AFFIRMED, and this appeal is DISMISSED, with prejudice.

DATED this 5th day of June, 2012.

_____
UNITED STATES MAGISTRATE JUDGE